UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONNIE TINCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Cause No. 1:12-cv-751-WTL-MJD |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendant's motion for summary judgment. Dkt. No. 40. The motion is fully briefed, and the Court, being duly advised, rules as follows.

**I.     STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.     BACKGROUND

The facts taken in the light most favorable to the non-moving party, Plaintiff Connie Tincher, are as follow. On July 22, 2009, Tincher fell at the United States Post Office on Raible Avenue in Anderson, Indiana (the "Post Office"). Post Office customers who are mailing large amounts of mail may take their mail to be processed in an area called the bulk mail entry unit. The Post Office also makes mail transportation equipment available for its bulk mail customers, including mail trays, tubs, and carts. When this equipment arrives for use at the Post Office, it is wrapped in shrink wrap and placed on a large pallet. As the equipment is taken off the pallet, postal employees cut down the shrink wrap, remove it, and throw it away.

When Tincher fell, she was in the process of collecting an empty mail tray to take back to her place of employment when her left heel was caught in excess shrink wrap that was on the floor.

During her deposition, Tincher testified that she is familiar with the Post Office, as she had regularly visited the Post Office bulk mail entry unit at least once or twice a month beginning in 1999. On a typical trip to the Post Office, Tincher would pull up to the parking lot behind the Post Office, where the bulk mail unit entry is located, and enter from the concrete loading dock outside. She would take the mail trays or tubs for bulk mailing, put them on top of the dock, obtain a rolling cart for the trays, and roll them into the bulk mail office. Before this incident, Tincher never had any difficulty with this process. She testified that "normally there was a clear path to any mail tubs" that she needed to obtain. Moreover, before this incident, Tincher had never observed anything about the Post Office premises that caused her concern.

On the date of the incident, Tincher dropped her mail off in the office and then looked for more trays or tubs to take back to work with her. She saw some trays sitting on a pallet stacked

three or four feet high and noticed that they had shrink wrap around them. Tincher stepped up onto the pallet to attempt and pull a tray off of the pallet herself. As she approached the pallet, she observed shrink wrap on the corners. After she stepped up onto the pallet, she tried to "jiggle loose the trays," but could not wrest one free. She then tried to jiggle some trays on the opposite side of the pallet and "stepped and leaned in," but they still refused to budge. She then decided to ask someone for help.

Tincher stepped back off the pallet. When she went to turn, her left heel caught in the shrink wrap, causing her to lose her balance and fall. Tincher testified that it was the shrink wrap, and not the pallet itself, that caused her to fall. As a result of the fall, Tincher sustained a broken arm.

Before the date of the incident, Tincher had never observed shrink wrap gathered at the corners of the tubs on a pallet. She testified that until that day the tubs were "never in rope or shrink wrap or anything."

At the time of the accident, Gregory Douglas served as the supervisor at the Post Office and he was among the first on the scene after Tincher's fall. When he arrived, Douglas observed shrink wrap gathered near the base of the pallet. He testified that the shrink wrap should not have been on the floor in the area where Tincher fell; he described its existence as "poor housekeeping."

As supervisor, Douglas's duties include investigating accidents. Douglas prepared an "Accident Investigation Worksheet" and a basic accident investigation form following Tincher's fall. In his worksheet, Douglas noted that Tincher had reported that the cause of her fall was shrink wrap on the floor near the bottom of the pallet. He concluded that her statement "appears to be true." Douglas thereafter concluded in his report that hazardous conditions precipitated the

3

incident – specifically, "shrink/plastic wrap gathered at the bottom of a pallet of trays creating a trip hazard."

The United States Post Office's safety philosophy is that "[a]ny injury can be prevented." It views this goal as "realistic, not just theoretical." The USPS has also identified seven "keys" to good safety supervision. Key #3 is "Be alert to unsafe conditions," and urges supervisors to "make every trip through [the] workplace an impromptu inspection tour; identify and correct hazards that might cause injuries." Daily inspections are required in order to identify possible causes of slip, trip, and fall accidents. Safety procedures require floors to be kept clean, as "[p]aper, pencils, paper clips, rubber bands, and similar objects on walking surfaces present serious slipping hazards."

According to Douglas, a clerk or custodian is responsible for taking shrink wrap off the pallets of trays and disposing of it. Douglas estimated that it would take only a minute or two to pick up discarded shrink wrap and dispose of it in a trashcan. Furthermore, Douglas testified that if he had walked through the area where Tincher fell and had seen the shrink wrap on the floor, he would have pulled it off and put it in the trash.

On June 1, 2012, Tincher filed the instant action against the United States alleging negligence. The United States has moved for summary judgment on Tincher's claim.

### III.  DISCUSSION

Tincher has brought the instant suit against the United States under the Federal Tort Claims Act ("FTCA"). The FTCA is a limited waiver of the United States' sovereign immunity and provides a remedy for personal injuries caused by the negligent acts of federal government employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). Liability for negligent acts exists to the same extent as a private individual's liability under the law of the

state in which the negligent act occurred. *Id.*; 28 U.S.C. § 2674. For the purposes of this motion, two aspects of Indiana tort law are relevant; each is addressed in turn below.

### A.     Comparative Fault

In Indiana, to prevail on a claim of negligence, a plaintiff must show (1) a duty on the party of the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) a failure by the defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by that breach. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991).

Nevertheless, under Indiana's Comparative Fault Act, a plaintiff is barred from recovery if her contributory fault is greater than the fault of the defendant. Ind. Code § 34-51-2-6. Otherwise, a plaintiff's contributory fault "diminishes proportionately the amount awarded." Ind. Code § 34-51-2-5. "Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm the plaintiff has suffered, which falls below the standard to which the plaintiff is required to conform for his or her own protection." *Faulk v. Nw. Radiologists, P.C.*, 751 N.E.2d 233, 239 (Ind. Ct. App. 2001).

Contributory negligence is an affirmative defense and the burden of proving it falls on the defendant. *E.g.*, *St. John Town Bd. v. Lambert*, 725 N.E.2d 507, 516 (Ind. Ct. App. 2000). Although contributory negligence is generally a question of fact requiring trial by jury or court,[1] summary judgment is proper when only one reasonable inference or conclusion can be drawn from the undisputed facts. *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 911 (Ind. 2009); *see also Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 597 (Ind. 2006).

---

[1] FTCA claims are tried to the Court. 28 U.S.C. § 2402.

Here, the United States contends that summary judgment is appropriate because no reasonable fact-finder could find that Tincher was less negligent than the USPS. Assuming for the purposes of this motion that a reasonable fact-finder could make the predicate finding – that Tincher was negligent – the Court finds that summary judgment is nevertheless inappropriate. Tincher has designated sufficient evidence, taken in the light most favorable to her, to support a finding that her fault was less than the USPS's. Therefore, the United States is not entitled to summary judgment.

### B.     Liability for Harm Caused to Invitees

Under Indiana law, "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991) (quoting Restatement of Torts § 343). The United States argues that it is entitled to summary judgment because no reasonable fact finder could find that the USPS should have expected that Tincher would not discover or realize the danger or would fail to protect herself against it. The Court does not agree. Tincher has designated sufficient evidence to support a finding that the USPS should have expected that customers would not discover this dangerous condition and would fail to protect themselves against it. Summary judgment must therefore be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is **DENIED**.

SO ORDERED:   07/15/2013

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.